1   Julie A. Mersch, Esq.
    Nevada Bar No. 004695
2   LAW OFFICE OF JULIE A. MERSCH
    1100 E. Bridger Ave.
3   Las Vegas, NV 89101
    (702) 387-5868
4   Fax: (702) 387-0109
    jam@merschlaw.com
5   Attorney for Plaintiff

6                        **UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF NEVADA**

8   ANGELA STEWART                          )   CASE NO. :
                                            )
9                 Plaintiff,                 )
                                            )
10          vs.                              )   **COMPLAINT**
                                            )
11  SUN LIFE ASSURANCE COMPANY OF            )
    CANADA (US), a Massachusetts             )
12  corporation;  DOES I through V inclusive;)
    and ROES I through V, inclusive,         )
13                                           )
                  Defendants.                )
14  _____     )

15          Plaintiff ANGELA STEWART, by and through her attorney, JULIE A. MERSCH,

16  ESQ., complains and alleges as follows:

17                        **GENERAL ALLEGATIONS**

18          1.  At all relevant times, Plaintiff ANGELA STEWART has been a resident of Clark

19  County, Nevada.

20          2.  At all times relevant, Defendant SUN LIFE ASSURANCE COMPANY OF

21  CANADA (US) (hereinafter "SUN LIFE") was and is a wholly-owned indirect subsidiary of

22  Sun Life Financial, Inc.  SUN LIFE is an insurance company doing business in the state of

23  Nevada with its principal place of business and U.S. Headquarters in Wellesley Hills,

24  Massachusetts.

25          3.  At all times herein, Plaintiff was the beneficiary of a group long-term disability

26  insurance policy issued by SUN LIFE to employer Clark County, Nevada ("CLARK

27  COUNTY"), policy no. 09302 effective January 1, 2008  ("subject policy").  Upon

28  information and belief, SUN LIFE investigated and made the decision to deny Plaintiff's

1  disability claim under the subject policy.

2      4.  That the true names and capacities, whether individual, corporate, associate, or

3  otherwise, of the Defendants named herein as DOES I through V and ROE

4  CORPORATIONS I through V inclusive, are unknown to Plaintiff at this time and Plaintiff,

5  therefore, sues said Defendants by such fictitious names.  Plaintiff is informed and believes

6  and therefore alleges,  that each of the Defendants designated as DOES and ROE

7  CORPORATIONS or any other entity,  are responsible in some manner or involved in the

8  handling of the subject claim including but not limited to the investigation, determination

9  and/or its resolution and caused damages proximately to Plaintiff as herein alleged, and

10  Plaintiff will ask leave of this court to amend his Complaint to insert the true names and

11  capacities of said DOES and ROES when the same become ascertained, and join said

12  Defendants in this action.

13      5.  Under the subject policy, "Total Disability" or "Totally Disabled" means "during

14  the Elimination Period and the next 60 months, the Employee, because of Injury or Sickness,

15  is unable to perform the Material and Substantial Duties of his Own Occupation.  After Total

16  or Partial Disability benefits combined have been paid for 60 months, the employee will

17  continue to be Totally Disabled if he is unable to perform with reasonable continuity any

18  Gainful Occupation for which he is or becomes reasonably qualified for by education,

19  training or experience. . ."

20      6.  Plaintiff's occupation is an Airport Transportation Specialist, which Defendant

21  categorizes as a "light duty" occupation.  The material and substantial duties of an Airport

22  Transportation Specialist include, *inter alia*, having the strength and mobility to work in an

23  airport exterior location; standing and walking for extended periods of time; driving a variety

24  of vehicles; directing, monitoring and maintaining vehicular traffic control at McCarran

25  airport; responding as directed to accidents or other emergency or disaster situations;

26  communicating and coordinating activities with shift supervisors, the Airport Services

27  coordinator and public safety personnel; patrolling parking facilities, roadway systems and

28  other areas on foot or in a vehicle for security, accident prevention, and parking surveillance;

1   maintaining logs and records related to the work; and, as necessary, performing routine

2   maintenance and landscape duties.

3        7.  In an "Occupational Analysis" dated February 22, 2012, Defendant's

4   rehabilitation case consultant, Bruce Hoffman, determined that Plaintiff's "position titled

5   Airport Transportation Specialist" was "similar to the occupation of a Passenger Service

6   Representative" which is performed "at a **light physical exertion level** involving lifting,

7   carrying, pushing, pulling up to 20 lbs. occasionally; **up to 10 lbs. frequently**; or negligible

8   amount constantly."  Mr. Hoffman continued:

9       This occupation would reasonably involve occasional stooping, far acuity, depth
    perception, field of vision; frequent reaching, handling, fingering, talking, hearing,
10      and near acuity to complete occupational duties. Ms. Stewart's [job description] does
    not address the lifting, carrying, pushing, or pulling demands of her job. **The [job**
11      **description] does state her position would require standing and or walking for**
    **extended periods and driv[ing] a variety of vehicles. . .**
12

13  <u>Internal Claim Note dated February 22, 2012</u> (emphasis added).

14       8.  On or about October 13, 2011, Plaintiff was unable to perform the material and

15  substantial duties of her own occupation due to, *inter alia*, cervical and lumbar disc disease

16  with radiculopathy.  As set forth in Dr. Villaluz's medical records, Plaintiff also suffered

17  from fibromyalgia; obstructive sleep apnea; and migraine headaches.

18       9.  Accordingly, on or about December 13, 2011, Plaintiff filed a claim for disability

19  benefits under the subject policy ("subject claim").

20       10.  In the "Attending Physician's Statement – Physical conditions only" ("APS")

21  dated November 23, 2011, Zephyrene Villaluz, M.D., Plaintiff's primary care physician,

22  reported STEWART's diagnosis of "cervical lumbar disc disease with radiculopathy" with

23  "tenderness of lumbar," "limited range of motion," and MRI results that showed "disc

24  disease."  Dr. Villaluz also noted that Plaintiff had limitations in her left and right hands for

25  "firm grasping"; could lift and carry less than 10 pounds only "occasionally"; and only had

26  "sedentary capacity."  Dr. Villaluz's subjective findings, as reported on the APS, included

27  "pain with limited motion" and "ambulates with cane."  He also noted that Plaintiff could not

28  work within her restrictions and limitations.

1    11.  In his APS, Dr. Villaluz certified that Plaintiff was unable to work for an

2  indefinite time period.

3    12.  On or about February 15, 2012 and again on April 12, 2012, SUNLIFE requested

4  records from Dr. Villaluz. Those records showed, *inter alia*, objective findings on MRI of

5  neck and back disc dessication at L5-S1 with right paracentral disc protrusion abutting the

6  right ventral cord at C5-6; edema at the sacrococcygeal junction; fibrogmyalgia; sleep apnea;

7  and migraines.  The records also showed a history of treatment in the form of cervical and

8  lumbar injections to help with Plaintiff's chronic pain.   The records also showed diagnoses

9  of fibromyalgia; obstructive sleep apnea; and migraine headaches.

10    13.  On or about April 9, 2012, claims analyst Aimee Edmonds requested Defendant's

11  employee Betty Todd, RN to review the medical records and answer this question:

12    Does the medical information in the file support restrictions and limitations
       preventing **light occupational duties** from [date of disability] 10/14/2011 to the
13    present?

14  Nurse Todd responded:

15    [Employee] has a history of chronic upper and lower back pain. When she stopped
       work she had been experiencing hip pain for 6 weeks. It is not clear what changed.
16    We have no objective findings nor has Dr. Villaluz ordered any diagnostic testing. We
       have no notes from pain management and it is not even known what she takes for
17    pain.

18  Medical Consultant Note dated April 9, 2012 (emphasis added)("first medical review").

19    14.  On the same date, Ms. Edmonds asked Nurse Todd to respond to this question:

20    Does the available medical data support that the claimant would be unable to function
       at a **sedentary level**? Please explain the rationale for your conclusions.
21
    Nurse Todd responded:
22
      No. I see no reason why she could not function at **a sedentary level from the date of
23    disability to the present**. She [complains of left hip] pain but there is no
       documentation that it hurts to sit.
24
    Id (emphasis added).
25

26    15.  The next day, April 10, 2012, Ms. Edmonds contacted Plaintiff and conducted an

27  "initial phone interview" to help clarify some of the questions posed by Nurse Todd in her

28  first medical review.  In the interview, Plaintiff advised Ms. Edmonds that her medical

1 "problems began [with her 2003 work accident] but progressed each year and with constant

2 standing at [her] job, she continued to get worse."  Plaintiff further advised that she "worked

3 in pain since the accident as long as she could and she just couldn't do it anymore."  She

4 further explained that "[Her employer] allow[ed] her to work the shuttle so she didn't have to

5 stand all day but she couldn't even sit on shuttle either." Initial Phone Interview dated April

6 10, 2012.  Plaintiff reported that her "pain meds help for a few hours" but that her job

7 requires long periods of standing.  Id.  Plaintiff agreed to provide objective testing from

8 January 2011 to Defendant for review. Id.

9      16.  Upon conclusion of the phone interview, Ms. Edmonds noted her intent to obtain

10 additional records and have a medical doctor review the medical file:

11     We already conducted medical review however we are only in [beginning] of 1st 30
days so we will [request additional] records and conduct another review.  **This time**

12     **full review with MD** so we can review her condition and progression of disability to
this point since she focuses on nothing specific prior to [date of disability].  **It is**

13     **primarily her condition worsening over time from accident in 2003.**

14 Initial Phone Interview dated 4/10/12 (emphasis added).

15      17.  On or about April 25, 2012, Plaintiff provided Defendant with additional medical

16 records, including pain management records from 2007, additional treatment notes from

17 2011, and objective testing results from 2011.

18      18.  Sun Life, by and through Ms. Edmonds, did not send the medical records,

19 including the updated records, to a medical doctor for review. Instead, Ms. Edmonds sent the

20 additional medical records back to Nurse Todd for review ("second medical review").

21      19.  On or about May 2, 2012, Nurse Todd performed a second medical review.  Ms.

22 Edmonds posed the exact same questions to Nurse Todd as she had done in the first medical

23 review:

24     Does the medical information in the file support restrictions and limitations
preventing light occupational duties from [date of disability] 10/14/2011 to the

25     present?

26     Does the available medical data support that the claimant would be unable to function
at a sedentary level? Please explain the rationale for your conclusions.

27

28 With respect to the first question, Nurse Todd answered in full: "No.  The additional medical

1   records show [complaints of] chronic pain but it is still unclear why she stopped working."

2   To the second question, Nurse Todd simply wrote in response: "No. As previously stated, I

3   see no reason why she could not function **at a sedentary level** from the date of disability to

4   the present. She [complains of left hip pain] but **there is no documentation that it hurts to**

5   **sit**." Second Medical Review dated May 2, 2012 (emphasis added).

6           20.  On May 10, 2012, Ms. Edmonds concluded her review of Plaintiff's claim and

7   summarized her findings:

8           Received medical review response.  Additional notes do not change initial review
            decision. We only have medical from 1 physician Dr. Villaluz.  The notes do not
9           indicate restrictions of claimant's function and level of restrictions prior to going out
            of work. MRI from 2011 was reviewed. **Claimant has history of chronic pain**
10          **however it is not clear what changed to cause her to go out of work.** Referred to
            pain management however no visits and **unclear what her meds are at this time**, **we**
11          **have no objective findings prior to [date of disability]** nor has diagnostic testing
            been ordered.
12

13  Claim Note dated May 10, 2012 by Aimee Edmonds (emphasis added).

14          21.  On May 15, 2012, SUN LIFE, by and through Ms. Edmonds, denied the subject

15  claim, citing the lack of "specific objective medical information supporting why you had to

16  stop working."

17                          **FIRST CAUSE OF ACTION**

18                            **(Breach of Contract)**

19          22.  Plaintiff adopts and incorporates by reference Paragraphs 1 - 21.

20          23.  As a result of the subject denial, Defendant SUN LIFE breached the subject

21  policy.

22          24.  As a result of SUN LIFE's breach, Plaintiff has incurred special damages in

23  excess of $10,000.00, including benefits withheld from approximately January 12, 2012

24  through the present and continuing, and interest thereon.

25          25.  As a further result of Defendant's breach, Plaintiff has suffered general damages,

26  including anxiety, worry, mental and emotional distress, all to Plaintiff's general damage in

27  the sum in excess of $10,000.00.

28          26.  As a further result of Defendant's breach, Plaintiff  has been forced to retain

1   the services of an attorney and is therefore entitled to reasonable attorney's fees and costs.

2   **SECOND CAUSE OF ACTION**

3   **(Breach of the Covenant of Good Faith And Fair Dealing and
    Bad Faith Under Common Law)**

4

5   27. Plaintiff adopts and incorporates by reference Paragraphs 1 - 26.

6   28. Defendant had a duty to fully and fairly investigate the subject claim in good

7   faith.

8   29. Defendant breached this duty when it determined, by and through Nurse Todd,

9   that Plaintiff could perform a sedentary job, even though it knew that Plaintiff's job was

10  considered "light duty", as set forth in its internal notes and the job description provided to it.

11  Defendant knew that Plaintiff's job as "Airport Transportation Specialist" required her to

12  stand for prolonged periods and further knew that she could not stand for prolonged periods,

13  given her chronic pain condition and objective findings dating back to 2003.   In determining

14  that she could perform a sedentary job, Defendant purposefully performed an inadequate

15  investigation into the subject claim, to facilitate claim denial.

16  30. Defendant breached this duty when it failed to request an Independent Medical

17  Evaluation from a medical doctor or a Functional Capacity Examination from a qualified

18  professional, since it did not heed Dr. Villaluz's restrictions and limitations or otherwise

19  follow up with him for more information or for clarification of his opinions.

20  31. Defendant further breached this duty when it failed to have an appropriate

21  medical provider review Plaintiff's medical records.  Nurse Todd was not qualified to offer

22  an opinion that Dr. Villaluz's restrictions and limitations were not supported.

23  32. In order to facilitate claim denial, Defendant ignored its own internal plan to have

24  a "full review with MD" upon the second medical review, instead sending the updated

25  medical records provided by Plaintiff back to Nurse Todd.

26  33. Defendant breached this duty when it failed to consider STEWART's own

27  explanation of her symptoms and how they affected her ability to work as an Airport

28  Transportation Specialist, as reflected by Defendant in its  "Initial Phone Interview" dated

1   April 10, 2012.  Plaintiff explained that she worked with pain "as long as she could . . . and

2   just couldn't do it anymore."  She also explained that her attempts at sitting, in lieu of

3   standing, did not ease her chronic pain. Defendant had no basis to dispute that Plaintiff

4   suffered from "chronic pain" and in fact, Nurse Todd's first and second medical reviews do

5   not do so.

6        34.  Defendant breached this duty when it failed to consider (as an additional source

7   of information) the fact that Plaintiff's employer had independently determined that

8   STEWART was permanently disabled.  SUN LIFE could have requested the medical and

9   other documentation on which CLARK COUNTY made this determination but failed to do

10  so.

11       35.  Defendant breached this duty when it ignored objective evidence supporting

12  Plaintiff's restrictions and limitations, as defined under the "proof of claim" provision in the

13  subject policy.  That same provision does not limit proof of disability to only "objective

14  evidence." Nevertheless, in order to facilitate claim denial, Defendant ignored both objective

15  and subjective evidence of total disability.

16       36.  Defendant knew that Plaintiff had been diagnosed with other medical conditions,

17  including fibromyalgia, migraine headaches, and obstructive sleep apnea. It had a duty to

18  investigate whether those conditions further diminished her ability to perform her own

19  occupation.  Defendant breached this duty to investigate by failing to inquire in any manner

20  whether they did, including but not limited to, ordering medical records prior to 2011.

21       37.  As a result of Defendant's breach, Plaintiff has incurred special damages in

22  excess of $10,000.00, including benefits withheld from approximately January 12, 2012

23  through the present and continuing, and interest thereon.

24       38.  As a further result of Defendant's breach, Plaintiff has suffered general damages,

25  including anxiety, worry, mental and emotional distress, all to Plaintiff's general damage in

26  the sum in excess of $10,000.00.

27       39.  Defendant intended its conduct, as described herein, to cause injury to the

28  Plaintiff, or Defendant carried on with such conduct in conscious disregard for the rights of

1   the Plaintiff, as to subject the Plaintiff to cruel and unjust hardship, such as to constitute

2   malice, oppression, or fraud under NRS §42.005, thereby entitling Plaintiff to punitive

3   damages in an amount in excess of $10,000.00.

4       40.  As a further result of Defendant's breach, Plaintiff has been forced to retain the

5   services of an attorney and is therefore entitled to reasonable attorney's fees and costs.

6   **THIRD CAUSE OF ACTION**

7   **(Violation of the Nevada Unfair Trade Practices Act)**

8       41.  Plaintiff adopts and incorporates by reference Paragraphs 1 - 40.

9       42.  Defendant SUN LIFE engaged in unfair trade practices in violation of the Nevada

10  Unfair Trade Practices Act ("NUTPA") by failing, *inter alia*, to provide Plaintiff with a

11  reasonable explanation of the basis in the insurance policy, with respect to the facts of

12  Plaintiff's claim and the applicable law, for the refusal to pay benefits.  NRS 686A.310(n),

13  NAC 686A.675 (1).

14      43.  Defendant engaged in unfair trade practices in violation of NUTPA by failing to

15  pay benefits when its liability under the subject policy was reasonably clear. NRS

16  686A.310(e).

17      44.  Defendant misrepresented a non-existent policy provision to Plaintiff in its denial

18  letter when it told her "[i]t is not clear in the medical records what changed in your condition

19  causing you to go out of work on October 14, 2011."  Defendant knew that Plaintiff had

20  explained that her chronic pain had continued to the point that she could no longer perform

21  her own occupation. Defendant further knew that the subject policy does not require a

22  "change" in a medical condition as a prerequisite to the payment of disability benefits. By

23  basing its denial on a fictitious requirement that a  "change" occur in her medical condition

24  before benefits would be paid, Defendant misrepresented subject policy provisions. NRS

25  686A.310(a).

26      45.  Defendant further misrepresented policy provisions by suggesting that her claim

27  may be governed by ERISA, when it in fact knew, or should have known, that it was not.

28  There is absolutely no reference to ERISA in the subject policy.

- 9 -

1    46. Plaintiff is informed and believes that Defendant intends to and will continue to

2    deny and withhold benefits due Plaintiff in violation of NUTPA unless compelled to pay her

3    benefits by a final judgment of this Court.

4    47. As a result of Defendant's breach, Plaintiff has incurred special damages in

5    excess of $10,000.00, including benefits withheld from approximately January 12, 2012

6    through the present and continuing, and interest thereon.

7    48. As a further result of Defendant's breach, Plaintiff has suffered general damages,

8    including anxiety, worry, mental and emotional distress, all to Plaintiff's general damage in

9    the sum in excess of $10,000.00.

10    49. Defendant intended its conduct, as described herein, to cause injury to the

11    Plaintiff, or Defendant carried on with such conduct in conscious disregard for the rights of

12    the Plaintiff, as to subject the Plaintiff to cruel and unjust hardship, such as to constitute

13    malice, oppression, or fraud under NRS §42.005, thereby entitling Plaintiff to punitive

14    damages in an amount in excess of $10,000.00.

15    50. As a further result of Defendant's breach, Plaintiff has been forced to retain the

16    services of an attorney and is therefore entitled to reasonable attorney's fees and costs.

17    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as

18    follows:

19    1. For special damages in excess of $10,000;

20    2. For general damages in excess of $10,000;

21    3. For punitive damages in excess of $10,000;

22    4. For prejudgment and post-judgment interest;

23    / / / /

24    / / / /

25    / / / /

26    / / / /

27    / / / /

28    / / / /

5. For reasonable attorney's fees and costs of suit incurred; and

6. For such other and further relief as this Court finds just and proper.

DATED this 5th day of August, 2013.

                                        LAW OFFICE OF JULIE A. MERSCH


                              By: ___/s/ Julie A. Mersch_____
                                        JULIE A. MERSCH, ESQ.
                                        Nevada Bar No. 004695
                                        1100 E. Bridger Ave.
                                        Las Vegas, Nevada 89101
                                        Attorney for Plaintiff

W:\STEWART\PLDGS\COMPLAINT.wpd

- 11 -